Kim SWYERS, Plaintiff/Appellant,

v.

THERMAL SCIENCE, INC.,
Defendant/Respondent.

No. 65431.

Missouri Court of Appeals,
Eastern District,
Division Two.

Sept. 20, 1994.

Application to Transfer Denied
Dec. 20, 1994.

Michael J. Hoare, John D. Lynn, Michael J. Hoare & Assoc., P.C., St. Louis, for appellant.

Charles M. Poplstein, Harry W. Wellford, Jr., Ellen F. Cruickshank, Thompson & Mitchell, St. Louis, for respondent.

SMITH, Presiding Judge.

Plaintiff, Kim Swyers, appeals from a summary judgment entered by the trial court in favor of defendant, Thermal Science, Inc. (TSI) in plaintiff's sex discrimination suit. She asserts that the company refused to hire her because she is female. Initially, she filed a sex discrimination charge with the Missouri Human Rights Commission, (MHRC) against defendant for its failure to hire her. The MHRC issued Swyers a "Notice of Right To Sue" allowing her to seek judicial remedy for sex discrimination in a state court under the Missouri Human Rights Act. Sec. 213.111, RSMo1992 Supp. Swyers sued in the St. Louis County Circuit Court. The Circuit Court granted TSI's motion for summary judgment. We affirm.

■ When considering an appeal from a summary judgment, this court reviews the facts in the light most favorable to the party against whom judgment was entered. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993) [1–3].

Swyers applied for a job in TSI's factory. She made separate applications in March of 1989, January of 1990, and July of 1991. She was unsuccessful in all of her attempts to gain employment with TSI. In the summer of 1989, Swyers went to TSI's place of business to meet with its plant manager, Tom Dunn. Dunn told Swyers that he would not hire any women. He said that if he hired women nothing would get done and she would have to sue him before he would hire a woman.

In preparation for this litigation, TSI discovered that Swyers had made certain misrepresentations on her job applications. On the application she submitted in July of 1991, she said her reason for leaving Imperial Plastics, a former employer, was that she "quit". In an affidavit, Gary Suellentrop, plant manager of Imperial Plastics, stated that Swyers was discharged for leaving work without permission and that she did not quit.

Also, in that application, she stated that she worked for Mann's Auto Body for three years and left because she moved out of state. In her January 1990 application, she said she had been employed at Mann's for four years and, in her March 1989 application, she did not mention Mann's at all. In a deposition, Michael Mann, the proprietor of Mann's Auto Body, said that she worked for him for about three months or, in any event, a "short period of time". Mann also stated that she was fired for taking a check that he had signed, making it out to herself, and trying to cash it. Plaintiff did not refute these charges.

The trial court held that regardless of whether the company discriminated against Swyers based on sex, it would not have hired her if it knew that she falsified her applications.

Swyers contends that the trial court improperly granted TSI summary judgment on her sex discrimination suit. She asserts that the company refused to hire her because she is a female. Further, had TSI not harbored this illegal motive, it would have never found out about her falsified application and she would be employed by it. Therefore, she claims she is entitled to maintain an action under § 213.111.

TSI relies on cases which have upheld an "after-acquired evidence" defense. It claims that even if it did discriminate against Swyers based on her sex, it would have refused to hire her, anyway, because she falsified her applications.

■ In interpreting the MHRA, Missouri courts have adopted federal case law from Title VII cases as well as case law from other states interpreting analogous discrimination statutes. *Wentz v. Industrial Automation*, 847 S.W.2d 877, 879 (Mo.App.1992). One purpose of anti-discrimination legislation is to make persons whole for injuries caused

by unlawful employment discrimination. *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) S.Ct. [6–8].

■ In *Summers v. State Farm Mutual Automobile Insurance Company*, 864 F.2d 700 (10th Cir.1988), an employee sued his employer alleging that it discharged him on account of his age and religion. Nearly four years after his discharge, when preparing for trial, the employer discovered over 150 instances where the employee had falsified records. The employer moved for summary judgment on the grounds that, had it known of the falsifications, it would have fired him. The trial court granted the motion. On appeal, the Tenth Circuit affirmed. The Court noted that the goal of discrimination litigation is to put the employee where he would have been but for the discrimination, and since the employer would have fired him anyway, he is not entitled to relief. *Id.* at [3].

The *Summers* court cited *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.1984), *cert. denied*, 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d 62 (1984), in support of its conclusion. There, plaintiff sued claiming he was denied a job due to his age. Defendant's policy was to refuse to process a flight officer application for anyone over 35 years of age. In preparing for litigation, defendant discovered that a previous employer had fired plaintiff for fraud. The Fourth Circuit found that the employer would have a defense if it could prove it would not have hired the plaintiff in the first place, based on facts which defendant would have discovered through a reasonable processing of his application. *Id.* at [5]. Therefore, the court concluded he could not recover back pay even for the period before the fraud was discovered. *Id.*

Similarly, in *Collor v. Thermal Science, Inc.*, 63 Fair Empl.Prac.Cas. (BNA) 92, 1992 WL 541107 (D.C.E.D.Mo.1992), plaintiff filed suit against defendant, TSI, claiming sex discrimination in its failure to hire her. On her application she claimed that she had previously worked for a confectionery, however, the manager of that business gave an affidavit saying she had never worked for him.

She also claimed that she left the employ of another company because the company moved, when, in fact, she was dismissed due to absenteeism. The Federal District Court held for defendant on summary judgment, based on evidence that it would not have hired her if it had known of the resume fraud. Plaintiff there failed to rebut defendant's evidence of its policy not to hire those who falsified applications. The thrust of these opinions is that discriminatory intent in an employment decision does not prevent the defendant from establishing that in the absence of discrimination the same decision would have been made.

Swyers argues that the "after-acquired evidence" defense is not applicable here, and, at most, only limits recovery. She relies on *Wallace v. Dunn Construction Company, Inc.*, 968 F.2d 1174 (11th Cir.1992), for this contention. That was an illegal discharge case. Plaintiff alleged that the employer fired her due to her numerous objections to sexual harassment. While preparing for litigation, the employer discovered that she had lied on her application. The Eleventh Circuit, while noting that after-acquired evidence is relevant to the amount of relief to which plaintiff is entitled, said that it was not an absolute bar to recovery. The Court concluded that the *Summers* court erred because to deny plaintiff recovery would leave her in a worse position than if she had not been discriminated against. It reasoned that she would have remained employed absent the discrimination. *Id.* at [3].

In a later case a federal district court in Georgia held that the *Wallace* decision is limited to cases of wrongful discharge, not wrongful refusal to hire. *Puhy v. Delta Air Lines, Inc.*, 833 F.Supp. 1577 (N.D.Ga.1993) [7]. The court reasoned that the key to the *Wallace* holding was the desire not to place plaintiff in a worse position than she would have been absent the discrimination. Unlike the discharge case, in the hiring scenario, the after-acquired evidence supports the conclusion that even if the alleged discrimination had not occurred and plaintiff had initially been granted an interview, she would not have been hired. *Id.* Therefore, to use it as a defense puts her in no worse position.

**658**

*Puhy* distinguishes the instant case from *Wallace* and similar discriminatory discharge cases. The rationale is that once a person is hired and is doing a satisfactory job, she would not be fired but for the discriminatory purpose or the discovery that she falsified her application. If the employer would not have discovered the falsification but for the discrimination, she probably would not have been fired at all. In the wrongful refusal to hire case it is reasonable to conclude that a check of information on the resume would have established the falsifications.

 Therefore, to maintain the defense, TSI must show that it does check on past work history and that it would not have hired plaintiff had it known of the falsifications. TSI claims that it has a policy not to hire anyone who falsifies an application. An affidavit from its personnel officer states that it does confirm past work history and obtains references from past employers. The affidavit further states that TSI has a policy not to hire applicants who falsify their application and would fire an employee if such falsification were discovered after employment. The company cites two other instances where applicants made misrepresentations on their applications and TSI refused to hire them. Plaintiff did not refute the facts contained in the affidavit.

Swyers claims that a self-serving affidavit and two prior instances does not evidence a policy. Courts have granted summary judgments in these types of cases based on affidavits of a company policy. *See, Johnson v. Honeywell Information Systems, Inc.,* 955 F.2d 409 (6th Cir.1992) [4], and *Washington v. Lake County, Ill.,* 969 F.2d 250 (7th Cir.1992) [8].

Summary judgment allows the trial court to enter judgment where the defending party has demonstrated that there is no genuine dispute as to each of the facts necessary to establish an affirmative defense. *ITT Commercial Finance, supra,* at [16]. A genuine issue exists when the record contains competent materials that evidence two plausible but contradictory accounts of the essential facts. *Id.* at [17]. Once the defendant has moved for summary judgment based on a

defense, the claimant must show by affidavit, depositions, answers to interrogatories or admissions on file that one or more of the facts that defendant relies upon is disputed. *Id.* Because Swyers provided no evidence to contradict TSI's evidence of its policy, there is no dispute. The trial court properly granted summary judgment.

Judgment affirmed.

PUDLOWSKI and WHITE, JJ., concur.