John W. HAMMOND, Appellant,

v.

MUNICIPAL CORRECTION
INSTITUTE, et al.,
Respondent.

No. WD 61438.

Missouri Court of Appeals,
Western District.

March 28, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 27, 2003.

Application for Transfer Sustained
July 1, 2003.

Case Retransferred Oct. 28, 2003.

Court of Appeals Opinion Readopted
Nov. 6, 2003.

Rebecca M. Randles, Shawnee, KS, for Appellant.

Douglas Marshall McMillian, Kansas City, MO, for Respondent.

Before JAMES M. SMART, JR., ROBERT G. ULRICH and RONALD R. HOLLIGER, JJ.

JAMES M. SMART, JR., Judge.

John Hammond was employed by the City of Kansas City as a corrections officer at the Municipal Corrections Institution [1] ("MCI") from January 1997 until his termination in September 1999. MCI is a subdivision of a department of the City of Kansas City, Missouri ("Kansas City"). After his termination, Hammond filed complaints with the Missouri Commission on Human Rights ("MCHR"), claiming that MCI discriminated against him based on his mental illness, schizoaffective disorder. The MCHR investigates violations of the Missouri Human Rights Act. Hammond also lodged complaints with the Equal Employment Opportunity Commission ("EEOC"), claiming that MCI discriminated against him because of his race. The EEOC investigates employers accused of violation the Civil Rights Act, Title VII.

The claims Hammond filed with the MCHR and the EEOC were filed at different times and listed by the respective agencies as separate complaints. Hammond filed at least three claims with the MCHR and at least four claims with the EEOC. Hammond received determinations from the MCHR and the EEOC on his cases at different times. The MCHR sent Hammond "right-to-sue" letters for his three cases that were dated February 9, 2000; March 21, 2000; and February 22, 2001.

Hammond filed suit in the Circuit Court of Jackson County against MCI and Kansas City, on June 20, 2000. Hammond's petition alleged only one count, an action for violation of the Missouri Human Rights Act. The petition did not invoke any Title VII violation. Hammond's petition was based on the MCHR "right-to-sue" letter

---

1. The Municipal Corrections Institution is part of the City of Kansas City. The City points out that MCI is not a separate entity capable of being sued. Because our disposi- tion of the matter is on other grounds, and because the City of Kansas City was also a named defendant, the status of MCI is immaterial to our ruling.

issued on March 21, 2000, which was the only letter attached. Hammond filed a first amended petition on January 28, 2001. The amended petition still contained only a count based on the Missouri Human Rights Act and not on any Title VII violation. Attached to the amended petition was the March 21, 2000 letter from the MCHR and an August 31, 2000 letter from the EEOC.

The original petition and first amended petition were not immediately served on MCI and Kansas City, but were held until April 9, 2001. On May 1, 2001, Kansas City filed a motion to dismiss, alleging, *inter alia*, that Hammond's petition was barred by the statute of limitations. The court dismissed Hammond's suit with prejudice on the grounds that the petition was not timely filed. Hammond now appeals.

## Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, this standard of review applies:

> A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

*Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 306 (Mo. banc 1993) (internal citations omitted).

## Statute of Limitations

Hammond argues that the trial court erred in granting the motion to dismiss on the basis that Hammond's suit was barred by the statute of limitations because the petition had, in fact, been timely filed.

A close examination of the petitions and motions presented to the trial court is required to fully address this issue. After being served with the first amended petition, Kansas City filed a motion to dismiss. Kansas City argued that Hammond's petition was not timely filed because the petition was based on the March 21, 2000 right-to-sue letter issued by the MCHR, but was filed ninety-one days later, after the statute of limitations under the Missouri Human Rights Act had expired.

The Missouri Human Rights Act is similar to the federal Civil Rights Act, 42 U.S.C. § 1981, but the two acts are not identical. The Missouri Human Rights Act prohibits employers from discriminating against an individual because of race, color, religion, national origin, sex, ancestry, age or disability. § 213.055, RSMo. In order to sue for a violation of the Missouri Human Rights Act, one must first file a complaint with the MCHR. § 213.075. The MCHR will then proceed with administrative remedies or issue a "right-to-sue" letter. The right-to-sue letter allows the party to file a civil action in either state or federal court. §§ 213.075, 213.111. A statute of limitations begins to run when the letter is issued:

> Any action brought in court under [the Missouri Human Rights Act] shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

§ 213.111.

Hammond's original petition, filed on June 20, 2000, contained one count, an

action for violation of the Missouri Human Rights Act. Hammond pleaded that he had received a right-to-sue letter. Attached to the petition was a right-to-sue letter issued by the MCHR dated March 21, 2000. The letter did not describe the charge against MCI, but only listed a case number and identified the parties, Hammond and MCI. The letter also informed Hammond that he had ninety days from the date of letter to sue MCI in state circuit court. The notice was contained in the letter twice, the first time in bold letters and underlined, the second time in bold and all capital letters. The letter also, in the first sentence, directed Hammond to section 213.111, RSMo, the statute of limitations set out above. The petition did not mention any other right-to-sue letters.

Hammond's original petition was filed ninety-one days after the March 21, 2000 right-to-sue letter was issued by the MCHR. Hammond argues that the court erred in dismissing his petition.

## Premature Filing

First, Hammond argues that while the petition was filed after the running of the statute of limitations with regard to the March 21, 2000 letter, it was filed prematurely in regard to a letter issued February 22, 2001. Hammond states that "[p]laintiff was entitled to bring his action within ninety days of receipt of his final right-to-sue letter from the Missouri Human Rights Commission." Under this theory, Hammond would have been entitled to file his suit against MCI as late as ninety days after receipt of the final "right-to-sue" letter from the MCHP dated February 22, 2001, and include all claims previously filed with the MCHR even if the ninety day period had passed on those claims.

No Missouri court has analyzed this issue. In cases involving employment discrimination, when there is no Missouri precedent, the court may look to decisions involving federal discrimination law for guidance. *Vankempen v. McDonnell Douglas Corp.*, 923 F.Supp. 146, 149 (E.D.Mo.1996). Hammond asks that this court adopt two federal doctrines.

First, Hammond argues that a petition filed under the Missouri Human Rights Act may be filed prior to the receipt or issuance of a right-to-sue letter by the MCHR. Hammond cites the *Vankempen* decision of the United States District Court for the Eastern District of Missouri. The court in that case held that a right-to-sue letter from the MCHR was a condition precedent, not a jurisdictional prerequisite, to filing an MHRA claim. *Id.* An MHRA suit filed prematurely could be "cured" by the MCHR issuing a right-to-sue letter. *Id.* Thus, Hammond argues, his petition was timely filed because it was cured when the MCHR issued the February 22, 2001 letter. He contends the trial court erred in dismissing the petition.

Second, Hammond argues that he had a right to wait until the last right-to-sue letter was issued to bring suit. In *Brown v. Continental Can Co.*, 765 F.2d 810 (9th Cir.1985), the EEOC investigated two claims of discrimination filed by Brown: one for discrimination in training, and one for discrimination in his termination. *Id.* at 812. The EEOC issued a right-to-sue letter for his claim regarding his termination first. *Id.* Brown did not file suit within ninety days of receipt of the letter. *Id.* The EEOC later issued a right-to-sue letter regarding his training. *Id.* Brown then attempted to file suit regarding his termination. *Id.* The district court dismissed Brown's case with prejudice because of his failure to file within ninety days of receipt of the right-to-sue letter. *Id.* The Ninth Circuit of the United States Court of Appeals reversed. *Id.* at 815.

The court found that the events in Brown's separate claims filed with the EEOC were reasonably related. *Id.* at 813. The court reasoned that Brown should be able to sue for any discriminatory event that occurred after the training, a count on which he had a right-to-sue letter, so long as the claims of discrimination were related. *Id.* In essence, the court held that Brown could sue on the basis of his last right-to-sue letter, so long as the claims were related, even if the statute of limitations had run regarding an earlier right-to-sue letter. Accordingly, Hammond argues that, in this case, since his petition was timely filed as to the February 22, 2001 letter, he is entitled to include the claims contained in previous right-to-sue letters issued by the MCHR.

These arguments were not presented to the trial court in the same way that they have been presented to this court. Hammond asks this court to reverse the trial court because a third, valid, right-to-sue letter was issued on February 22, 2001, many months after Hammond had filed the petition, but before the petition was served on the defendants. But, in his suggestions in opposition to the motion to dismiss, Hammond states that he received three letters from the MCHR, dated February 9, 2000; March 21, 2000; and August 31, 2000. He made no mention of the February 22, 2001 letter.

The dates of the letters Hammond addressed in his suggestions in opposition are of particular importance. The February 9, 2000 and March 21, 2000 letters are contained in the record. There is, however, no record of an August 31, 2000 letter from the MCHR in the record presented to this court. While Hammond makes numerous references to this MCHR letter in his appellate brief, each reference to the legal file directs this court to an August 31, 2000 right-to-sue letter from the EEOC.

This court does not know whether an August 31, 2000 letter from the MCHR exists, or if Hammond has mistakenly assumed the EEOC letter was an MCHR letter. What is clear from the record is that there is no evidence that the trial court was presented with any right-to-sue letter from the MCHR dated after the March 21, 2000 letter.

The question presented to the trial court in Hammond's suggestions in opposition was whether Hammond's petition was adequately supported by the March 21, 2000 letter from the MCHR.

The trial court found:

> [P]laintiff argues that he was actually issued more than one "right-to-sue" letter by the Missouri Human Rights Commission and the petition was filed prior to the receipt of a third "right-to-sue" letter. However, the letter attached to the petition is dated March 21, 2000 and plaintiff concedes that this is ninety-one days before the petition was filed June 20, 2000 ... For the forgoing reason[ ], defendant MCI's Motion to Dismiss is granted.

This court cannot find that the trial court was in error.

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. *Nazeri*, 860 S.W.2d at 306. The petition and first amended petition and their attachments made no mention of any other right-to-sue letter from the MCHR other than the March 21, 2000 letter. The trial court was never made aware of the third MCHR letter, dated February 22, 2001, although the letter had been received several months before the motion to dismiss was filed. Hammond filed his motion in opposition to the motion to dismiss on June 14, 2001. Hammond could have made the court aware of the additional right-to-sue letter, either in his suggestions in opposi-

tion, or by seeking leave to amend the petition, or both. On the same day that Hammond filed his suggestions in opposition, he also filed a motion to amend his petition. The proposed amended petition did not include any reference to the February 22, 2001 letter.

■ An issue raised for the first time on appeal is not preserved for appellate review. *Barner v. Mo. Gaming Co.*, 48 S.W.3d 46, 50 (Mo.App.2001). The trial court made its ruling on the information presented to it, which was that the petition was based on a letter issued from the MCHR dated March 21, 2000. This court cannot reverse the ruling of the trial court based on information the trial court was not allowed to consider.

■ An additional question presented to the trial court was whether the August 31, 2000 right-to-sue letter from the EEOC could, under the doctrines of *Vankempen* and *Continental Can*, remedy the defect in the petition caused by the running of the statute of limitations. The City says that the August 31, 2000 letter cannot cure the defect. We agree.

■ A right-to-sue letter from the EEOC does not give rise to a right-to-sue under the MHRA; the plaintiff must first receive a right-to-sue letter from the MCHR. *Whitmore v. O'Connor Mgmt. Inc.*, 156 F.3d 796, 800 (8th Cir.1998). The Missouri Human Rights Act and Title VII are coextensive, but not identical, acts. These statutes create different causes of action. Here, Hammond did not allege in his petition any claim against MCI or Kansas City based on a Title VII action. Hammond fails to demonstrate how a right-to-sue letter issued by the EEOC could breathe life into a dead MCHR claim. In any event, this issue was not adequately presented to the trial court because Hammond asserted in his sugges-

tions that the August 31, 2001 letter was issued by the MCHR.

The trial court did not err in its ruling on the record before it. The court was presented only with a petition based on a right-to-sue letter that was issued more than ninety days prior to the filing of the petition.

### Continuing Violation

■ Hammond's second argument is that since Kansas City's alleged discriminatory actions constituted a pattern and practice of discrimination, the "continuing violation" doctrine excuses the running of the statute of limitations regarding the March 21, 2000 right-to-sue letter from the MCHR. This argument was not presented to the trial court and thus is not preserved for appellate review. *Barner*, 48 S.W.3d at 50. Moreover, the record is insufficient to support the argument.

■ Missouri courts recognize the concept of continuing violations, but the plaintiff must show that the violations were not isolated incidents. *Hill v. St. Louis Univ.*, 923 F.Supp. 1199, 1205 (E.D.Mo.1996). Hammond has made no effort to identify what claims are associated with the "right-to-sue" letters. The petition identifies fifteen specific acts of discrimination, but does not identify which acts of discrimination were even investigated by the MCHR and the EEOC. The alleged acts of discrimination span from March 1998 to the present. It is also notable that the right-to-sue letters indicate that some of the claims were filed almost one year apart, so the connection between each of the claims filed with the MCHR and the EEOC is not clear.

■ In any event, a "continuing violation" would provide no way around the limitations period. A "continuing violation" allows a plaintiff to plead events that

occurred prior to the 180 day statute of limitations for filing a claim of discrimination with the MCHR. *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 763 (Mo.App.1999). It allows the plaintiff to recover only for discrimination that occurred within the statutory period. *Ashley v. Boyle's Famous Corned Beef Co.*, 66 F.3d 164, 168 (8th Cir. banc 1995). The continuing violation theory only allows earlier events to be used to support the current claims of discrimination. *Gipson v. KAS Snacktime Co.*, 83 F.3d 225, 230 (8th Cir.1996). This court does not see how a claim of a continuing violation would excuse an untimely filing of an original petition.

## Notice Runs from Date of Letter, Not Receipt

■ Hammond's third argument is that the petition was timely filed because the petition was filed within ninety days of receipt of the right-to-sue letter. Hammond urges this court to adopt the federal statute of limitations for Title VII actions, which allows suit to be filed ninety days after receipt of a right-to-sue letter.

This argument was raised before the trial court in Hammond's motion in opposition to the motion to dismiss. Hammond's argument was short:

> Plaintiff's second right-to-sue letter was dated March 19, 2000. However, it was not received until March 21, 2000. Therefore, Plaintiff filed his action within 90 days of receipt of the letter. No case has directly addressed this issue. However, in analogous cases the Court has held that the issue relates to the time of receipt, not the date of the letter. In fact, the Federal EEOC right-to-sue letter uses that language exactly.

No citations were given to support Hammond's argument.

■ Hammond does expand on the argument in his appellate brief. Since the Missouri Human Rights Act is coextensive with Title VII of the Federal Civil Rights Act, Hammond argues, this court should follow federal decisions regarding the statute of limitations. Under Title VII, a litigant has ninety days from the *receipt* of the right-to-sue letter to bring suit. *Brooks v. Ferguson–Florissant Sch. Dist.*, 113 F.3d 903, 904 (8th Cir.1997); 42 U.S.C. 2000e–5(f)(1).

■ Missouri Courts have adopted federal Title VII case law when interpreting analogous discrimination statutes in the Missouri Human Rights Act. *Swyers v. Thermal Sci., Inc.*, 887 S.W.2d 655, 656 (Mo.App.1994). However, the Missouri Human Rights Act is not merely a reiteration of Title VII. The Act is in some ways broader than Title VII, and in other ways is more restrictive. If the wording in the Missouri Human Rights Act is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding. *See Keeney v. Hereford Concrete Prods., Inc.*, 911 S.W.2d 622 (Mo. banc 1995).

In *Keeney*, there was a difference in the Missouri Human Rights Act and Title VII concerning who is able to bring suit. The Missouri Human Rights Act was broader in that regard than Title VII. The Missouri Supreme Court held that the language contained in the Missouri Human Rights Act was clear, and any difference from Title VII was of no effect. *Id.* at 624–25.

Here, the Missouri Human Rights Act is more restrictive. Section 213.111.1 states:

> If, after one hundred eighty days from the filing of a complaint alleging an unlawful discriminatory practice ... the commission has not completed its administrative processing and the person aggrieved so requests in writing, the commission shall issue to the person

claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint. If, after the filing of a complaint ... as it relates to housing, and the person aggrieved so requests in writing, the commission shall issue to the person claiming to be aggrieved a letter indicating his or her right to bring a civil action within ninety days of such notice against the respondent named in the complaint. Such an action may be brought in any circuit court in any county in which the unlawful discriminatory practice is alleged to have occurred, either before a circuit or associate circuit judge. Upon issuance of this notice, the commission shall terminate all proceedings relating to the complaint. No person may file or reinstate a complaint with the commission after the issuance of a notice under this section relating to the same practice or act. *Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter* to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

(emphasis added). We agree with Hammond that the first two sentences are not clear as to whether the notice of the right to sue runs from the date the letter is issued or on the date the letter is received. This is because the drafters used the words "letter" and "notice" interchangedly, except for the last sentence, in which they used the words "notification letter." [2] But, because statutes are meant to be read and understood in their entirety, the language of the last sentence in section 213.111.1 is important: "Any action brought in court under [the Missouri Human Rights Act] shall be filed within ninety days from the date of the commission's notification letter to the individual...." The last sentence thus clarifies the potential confusion created in earlier parts of the text.

"Where the language of the statute is clear and unambiguous, courts must give effect to the language used by the legislature." *Keeney,* 911 S.W.2d at 624. While practitioners with experience under Title VII may tend to expect a parallel provision here (and thus may be lulled into a trap), we cannot say the statute is ambiguous. Statutes of limitations contained in the Missouri Human Rights Act have been strictly construed. *Hill v. John Chezik Imports,* 797 S.W.2d 528, 530 (Mo.App.1990); *Swartzbaugh v. State Farm Ins. Co.,* 924 F.Supp. 932 (E.D.Mo. 1995); *Waldermeyer v. ITT Consumer Financial Corp.,* 767 F.Supp. 989 (E.D.Mo. 1991). Statutes of limitation are favored in the law, and cannot be avoided unless the party seeking to do so brings himself within an exception enacted by the legislature. *Id.* Statutes of limitation may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature, and courts cannot extend those exceptions. *Id.* It might be a better idea to provide for a period of ninety days from receipt of the notice (letter), because of the conflict with EEOC practice. However,

**2.** For instance: "[T]he Commission shall issue ... a *letter* indicating his or her right to bring a civil action within ninety days of such *notice....*" This phrase is repeated once more in the statute. The statute then says: "upon issuance of this *notice,* the Commission...." It also later says "after the issuance of a *notice....*" Obviously, it would

have been better if the word "letter" had been used exclusively in the statute. Without the last sentence, the statute would be more subject to the accusation that it was ambiguous or so misleading as to require a broader construction. However, we cannot ignore the fact that the last sentence makes clear the meaning of the statute.

we cannot do that without re-writing the statute ourselves, something for which we have no authority.

Although the practitioner must carefully read the statute concerning the deadline for filing, the statute is sufficiently clear to avoid due process problems. Also, the ninety day requirement would be no surprise to a layperson, because that specific language was included twice in the letter to sue. The first sentence bolded and underlined the ninety day limitation. The second sentence appeared as follows:

[Y]ou are hereby notified of your right to sue the Respondent(s) named in your complaint in state circuit court. **THIS MUST BE DONE WITHIN 90 DAYS OF THE DATE OF THIS NOTICE OR YOUR RIGHT TO SUE IS LOST.**

(emphasis in original). The right to sue letter directs the recipient to section 211.111 RSMo., and includes a recitation of the statute. Thus, the law permits no relief here on a claim of lack of notice.

Hammond's only claim against MCI was for a violation of the Missouri Human Rights Act. Because any suit under the Missouri Human Rights Act filed beyond ninety days after the date of the right-to-sue letter is not timely, Hammond's letter was not filed in response to the March 21, 2000 right-to-sue letter.

### Rule 44.01

 Finally, Hammond argues that Rule 44.01(e) should apply to MCHR right-to-sue letters. Appellant has failed to preserve this argument for appellate review, because the argument was not presented to the trial court. *Barner*, 48 S.W.3d at 50. However, even if it had been properly preserved, the argument would fail. Rule 44.01(e) states:

Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon the party and the notice is served by mail, three days shall be added to the prescribed period.

Rule 41.01(a) states:

Rules 41 through 101 shall govern the following:

(1) Civil actions *pending* in this Court and court of appeals;

(2) Civil actions *pending* before a circuit judge except those actions governed by the probate code.

(3) Civil actions *pending* before an associate circuit judge sitting as a circuit judge.

(emphasis added). Rule 44.01 applies only to suits already filed and pending in a court, not to notices of the right-to-sue. The Rules of Civil Procedure, Rules 41 through 101, by their terms do not apply to proceedings in administrative agencies. *AT&T Info. Sys., Inc. v. Wallemann*, 827 S.W.2d 217, 221 (Mo.App.1992).

Though neither party addresses it in their briefs, Missouri courts have ruled on a similar case. In *State ex rel. Director of Revenue, State of Missouri v. Rauch*, 971 S.W.2d 350 (Mo.App.1998), the Department of Revenue suspended the license of Carolyn Stoneman after she was arrested for driving while intoxicated. *Id.* at 351. Stoneman filed a petition to review the decision of the administrative agency in the Circuit Court of Charles County. *Id.* at 352. Section 302.311, RSMo, provided that:

In the event an application for a license is denied or withheld, or in the event that a license is suspended or revoked by the director, the applicant or licensee so aggrieved may appeal to the circuit court of the county of his residence . . . for the review of administrative decisions at any time within thirty days after notice that a license is denied or

withheld or that a license is suspended or revoked.

The thirty day period ran from the date of hand delivery or mailing of the notice. § 536.110.2, RSMo. Stoneman's petition for review was filed more than thirty days after the notice was mailed, but within thirty-three days. *Rauch*, 971 S.W.2d at 353. Stoneman argued that three days should be added for mailing pursuant to Rule 44.01. *Id.* The court held that Rule 44.01 has no application to notice from an administrative agency concerning a right to file a petition. *Id.*

In this case, Rule 44.01 does not apply to a right-to-sue letter from the MCHR. The statute of limitations begins to run when the letter is issued:

> Any action brought in court under [the Missouri Human Rights Act] shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

§ 213.111. By the terms of the statute, there is no provision made for time the notice spends in the mail. Hammond's point is denied.

### Conclusion

For the foregoing reasons, we conclude that the trial court did not err in dismissing Hammond's petition as untimely filed.

ULRICH and HOLLIGER, JJ., concur.